E. T. NOLLNER, Appellant, *v.* MARGO M. GOU-
MOND HINES and MARGUERITE GOUMOND
DeVANEY, as Coexecutrices of the Estate· of
Prosper J. Goumond, Deceased, Respondents.

No. 4012

November 21, 1957                    318 P.2d 317

*Cleve Schultz,* of Las Vegas, for Appellant.

*Michael L. Hines* and *Herman M. Adams,* of Las
Vegas, for Respondents.

# OPINION

By the Court, MERRILL, J.:

This is an appeal taken by the defendant below from judgment in favor of respondents as coexecutrices of the last will of Prosper Jacob Goumond. The judgment was for the value of decedent's interest in a partnership, terminated by his death, which owned and operated the Hitchin' Post Motel in Clark County, Nevada. Appellant is the surviving partner. Judgment below fixed the value of partnership assets upon the basis of the testimony of witnesses who had appraised the property. Appellant contends that the judgment rendered was contrary to the terms of the partnership agreement which fixed the manner in which a deceased partner's interest was to be computed and paid by the survivor. The sole question upon this appeal is whether the partnership agreement, as construed by the partners themselves, fixed the value of the deceased partner's interest at cost of assets less depreciation, and thus precluded the establishing of the value of that interest by an independent appraisal. We have concluded that value was fixed by the agreement and that reversal is required.

The agreement was dated August 10, 1948. It was prepared by Goumond. The provisions of three paragraphs are material to our consideration. In the quotations which follow, all emphasis has been supplied.

Paragraph 6 provided for regular quarterly accountings. It states, "A full and complete inventory shall be

taken, and a *complete statement of the assets and liabilities* and the condition of the partnership shall be determined and stated and an accounting between the partners shall be had, and the profits or losses of the then quarter year shall be divided and paid or contributed. Such statement shall show all sums which may then be owing from the partnership to either of the parties hereto and such sums shall be considered as a debt of the partnership and shall be reflected in *the statement of the net worth of the partnership.* As between the parties hereto the value of the good will of business, shall be taken at $1.00, unless a higher value shall hereafter in writing be stated and mutually agreed upon."

Pursuant to these provisions, over a period of more than six years, on 25 separate occasions accountings were prepared. In each instance an inventory of the assets and liabilities was set forth. The last three statements, those of March 31, 1954, June 30, 1954 and September 30, 1954, are in the record before us. In each instance the supplies, equipment, furniture and fixtures, buildings and land are given a specified value and the capital interest of each of the partners is set at $20,-366.63. It appears that the property valuation was fixed at cost of the real estate, and cost less depreciation of other assets. Unrealized appreciation of assets was never taken into consideration and no revaluation of assets was ever made.

This form of statement, it would necessarily appear, had been mutually regarded by the partners as a discharge of their obligations to each other under the provisions of paragraph 6. Thus was demonstrated their conception of the "complete statement of the assets and liabilities" and the "statement of the net worth of the partnership" to which this paragraph of the agreement referred.

Paragraph 7 of the agreement provides "That each party shall sign duplicate copies of each of such statements of affairs, and each shall retain one of them for his own use; such accounts shall not again be opened,

unless some manifest error shall be discovered in either of them, within three months thereafter, and then so far only as respects the correcting of such error; and *every such statement of affairs shall, in all other respects, be conclusive evidence between and binding on said parties."*

In each instance the statement as prepared was signed by the partners. Pursuant to its terms it then became binding upon them. The agreement also expressly provides that it "shall inure to the benefit of and bind the heirs, executors and administrators of the respective parties hereto." The statement of assets as of September 30, 1954, signed by Goumond, thus became binding upon the respondents.

Paragraph 10 provides that the partnership shall be dissolved by the death of either party. It then states "Upon the death of either party hereto, all of the partnership property and the business and good will of said partnership shall immediately vest in the survivor. The survivor, however, shall immediately proceed to take inventory of all of the assets and liabilities of the partnership, and shall prepare a detailed and true statement of account and affairs of said partnership *from the date of the last quarter year for which the statement provided for in paragraph 6 hereof has been prepared and signed as provided in paragraph 7 hereof,* or the date of the latest of such statements so made and signed as aforesaid, and a copy of such statement shall be furnished and delivered to the legal representative of the deceased partner, and *the survivor shall pay to said legal representative one-half of the net worth of said partnership, plus all sums owing from the partnership to such deceased partner as shown by such last mentioned statement."*

The accounting requirement as quoted would seem to be subject to but one construction: That the survivor in his accounting to the legal representative of the deceased partner should simply take up where the partners themselves had left off.

Goumond died November 24, 1954. Upon his death,

pursuant to the provisions of paragraph 10, Nollner prepared a statement of account and affairs of the partnership from September 30, 1954 to November 24, 1954. In all respects this statement followed the practice adopted by the partners themselves over the period of the preceding six years. The statement, based upon the depreciated value of the partnership assets, showed the capital interest of each of the partners at the date of Goumond's death to be $19,375.45. This sum, by cash and promissory note, (pursuant to further provisions of the agreement), was tendered by Nollner to respondents. The tender was rejected, respondents contending that the statement did not show the true net worth of the partnership assets and that a revaluation should be had. This view was adopted by the trial court. Proof of value was received, upon the basis of which the court found the decedent's interest to be $31,750. Judgment in favor of respondents was rendered in this amount. In several respects appellant attacks the proof of value upon which the court relied. We need not consider these matters.

Respondents' position is untenable in several respects. To adopt their construction of the agreement we must (1) isolate from the rest of the agreement a portion of a sentence of paragraph ten (the portion last emphasized in our quotation) and construe it without regard to the rest of the agreement; (2) disregard the actions of the partners binding upon themselves and their heirs and construe "net worth" in a manner which the partners themselves had rejected on 25 occasions; (3) disregard the fact that the agreement was prepared by Goumond and construe it in his favor. These matters we cannot disregard. When they are taken into consideration, it is clear that the provisions of the agreement must be held to preclude any revaluation of the partnership assets in order that unrealized appreciation might be considered in determining net worth.

Respondents contend that as a matter of law "net

worth" implies valuation on the basis of "fair market value." The authorities they have cited are distinguishable. In no one of them was the term defined by agreement or practice in a manner expressly declared to be binding and conclusive. The cases simply state. the general rule that, in the *absence of agreement to the contrary,* the implied basis for evaluation of partnership assets is the fair market value. On the other hand it must be recognized that in business practice generally the cost method is not only the most common method of accounting, but, in many cases, is the only approved method. In Hill's "Law of Accounting", 54 Col. L. Rev. 1, 16, it is stated "It is a basic assumption of both accountants and the courts that fixed assets must be presented in terms of cost as measured by some acceptable standard."

Respondents contend that the quarterly statements as signed did not bind their testator to any construction of "net worth" for the reason that those words do not appear on any of the statements; that appellant's construction of the term is not appropriate to the circumstances of this case or to this particular agreement and would work hardship and unfairness.

We do not feel that the failure of the quarterly statements to use the words "net worth" is of any significance. Each such statement was prepared pursuant to the provisions of paragraph 6 which, by its very language, contemplated that such statement would be "the statement of the net worth of the partnership."

Upon their contention of unfairness respondents assert as common knowledge the fact that real estate values have risen generally in the Las Vegas area in the past 10 years. This does not render appellant's construction of the agreement unfair to the partners during their lifetime. Each stood in the position of being able to realize the full extent of appreciated value should he survive the other. Such a provision may not appear to

be the most conservative method of providing for one's heirs but it cannot be said to be unfair as between the partners themselves. If they chose to take the risk of survival their heirs are bound by their choice.

We conclude that judgment must be based upon an accounting pursuant to the provisions of the partnership agreement (paragraph 6 as incorporated by reference into paragraph 10) and not upon a revaluation of assets. Save for the method of determining net worth, the accounting provided by the appellant has not been challenged. Respondents are, then, entitled to judgment in the sum tendered by appellant. His tender, renewed in the proceedings below, has entitled him to costs in the action below. NRS 18.080. Herring-Hall-Marvin Safe Co. v. Balliet, 44 Nev. 94, 190 P. 76. That tender was pursuant to the provisions of paragraph 10 of the partnership agreement as follows: "* * * said survivor shall pay to such legal representative at least one-fifth of the amount so to be paid as aforesaid, and shall at the same time deliver to such legal representative the promissory note of said survivor for the payment of the balance of said sum in five equal annual installments, thereafter, with interest on deferred payments at the rate of five (5%) percent per annum, reserving the right to pay the whole of said balance at any time before the due date thereof, which note shall be secured by a Deed of Trust covering on the real property of said partnership."

Reversed and remanded with instructions that judgment be entered for plaintiffs below in accordance with the tender of the defendant, with costs to the defendant. Appellant shall have his costs on this appeal.

BADT, C. J., and EATHER, J., concur.